**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
MARTIN A. SCHULMAN, M.D.,                   :
MARTIN SCHULMAN, INDIVIDUAL          :
RETIREMENT ACCOUNT, AND               :
SUZANNE SCHULMAN,                               :
                                                                    :
    Plaintiffs,                                         :
                                                                    :          10 Civ. 3639 (HB)
       - against -                                 :
                                                                    :          OPINION & ORDER
Alvin J. Delaire, Jr.,                                   :
                                                                    :
    Defendant.                                       :
-------------------------------------------------------------x

**Hon. Harold Baer, Jr., District Judge:**

      Plaintiffs in this case allege that the Defendant, a securities broker, bears responsibility for losses that they incurred as a result of their investments with non-parties Bernard L. Madoff ("Madoff"), Bernard L. Madoff Investment Securities, LLC ("BMIS"), and the Madoff Fund (collectively, the "Madoff Entities"). The Plaintiffs claim violations of the Section 10(b) of the 1934 Securities Exchange Act (the "Exchange Act"), 15 U.S.C. § 78j(b), an unspecified breach of the 1933 Securities Act (the "Securities Act"), 15 U.S.C. §§ 77a *et seq.*, and a number of related state law claims. Plaintiffs allege that the Defendant's fraudulent misstatements and omissions induced them to invest and ultimately lose $9,600,000. Defendant now moves to dismiss. For the following reasons the motion is granted.

### FACTUAL BACKGROUND

      Plaintiffs Dr. Martin Schulman, Martin Schulman Individual Retirement Account ("Schulman IRA"), and Suzanne M. Schulman, Martni Schulman's wife, all invested separately with the Madoff Entities. Am. Compl. ¶¶ 2,3. Defendant Alvin J. Delaire, Jr. is alleged to have been working with the Madoff Entities at the same time that he was a registered securities representative of an entity known as CohMad Securities, Inc. ("CohMad"), a separately registered broker dealer. Am. Compl. ¶ 6.

      Schulman first met Delaire in 2002, prior to Schulman's first investment with Madoff. Am. Compl. ¶ 12. Schulman was introduced by a third party to Delaire as a potential source of information regarding the Madoff Entities and a means of introduction to the Madoff Entities'

management. Am. Compl. ¶ 14. Prior to meeting Delaire, Schulman had only general information concerning the Madoff Entities, primarily that Madoff had chaired the Board of the NASD, that BMIS was a respected boutique broker dealer and investment advisory firm, that public information indicated that BMIS had billions of dollars under management, and that BMIS accepted only those clients who met certain unknown financial or other standards. Am. Compl. ¶ 13.

According to the Amended Complaint, Delaire made the following representations to Schulman in 2002: (1) that Madoff and BMIS had a system for investing in only the strongest and most liquid of publicly owned companies, while protecting their investors and increasing overall return from such securities (the "Madoff System"); (2) that Delaire was a securities broker with CohMad, an independent company that also invested with Madoff and BMIS; (3) that CohMad had successfully invested many millions of dollars of its own, consistently earning at or above market returns; and (4) that Delaire was personally familiar with the Madoff System and how it worked. Am. Compl. ¶ 16.

Schulman ultimately decided to invest $6,000,000 with Madoff and BMIS at an unspecified time. Am. Compl. ¶ 18. Following this initial investment Delaire kept in irregular contact with Schulman, and intermittently encouraged additional investments by Schulman, Schulman IRA, and eventually Suzanne Schulman. Am. Compl. ¶ 19. Schulman received periodic statements from BMIS that reflected increases in his investment account's value. Am. Compl. ¶ 23. Plaintiffs each made additional investments of millions of dollars between 2006 and 2008. Am. Compl. ¶¶ 26-28.

In December 2009, Madoff confessed that the Madoff Fund was "just one big lie," and "basically, a giant Ponzi scheme." Am. Compl. ¶ 29. The SEC secured injunctive relief against Madoff and BMIS that essentially shut down those entities and rendered them without value. Am. Compl. ¶ 30. Criminal action ensued against Madoff and he has since pled guilty.  Am. Compl. ¶ 30.

### DISCUSSION

A motion to dismiss brought under Rule 12(b)(6) will be granted if there is a "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive dismissal on this ground, a plaintiff must "plead enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A facially plausible claim is one where

"the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). While the court must "draw all reasonable inferences in the [non-movant's] favor," *Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007), it need not accord "[l]egal conclusions, deductions or opinions couched as factual allegations ... a presumption of truthfulness." *In re NYSE Specialists Sec. Litig.,* 503 F.3d 89, 95 (2d Cir. 2007) (quotation marks omitted).

## I.   The Complaint fails to state a claim for fraud with sufficient particularity

The fraud claims alleged here under the Exchange Act, the Securities Act and the common law must satisfy the heightened pleading requirements of Rule 9(b) by stating with particularity the circumstances constituting fraud. *See ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009) (Exchange Act claims); *Muller-Paisner v. TIAA*, 289 F. App'x 461, 463, 2008 WL 3842899, at *1 (2d Cir. 2008) (common law fraud); *Citiline Holdings, Inc. v. iStar Fin. Inc.*, 701 F. Supp. 2d 506, 513 (S.D.N.Y. 2010) (Securities Act claims sounding in fraud) (quoting *Rombach v. Chang,* 355 F.3d 164, 166 (2d Cir. 2004).

To comply with Rule 9(b), a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach*, 355 F.3d at 170. "[W]hile Rule 9(b) permits scienter to be demonstrated by inference, this must not be mistaken for license to base claims of fraud on speculation and conclusory allegations. An ample factual basis must be supplied to support the charges." *Saltz v. First Frontier, LP*, No. 10 Civ. 964 (LBS), 2010 WL 5298225, at *3 (S.D.N.Y. Dec. 23, 2010) (internal citations omitted).

### A.   The complaint fails to specify fraudulent statements

The Plaintiffs fail to show any statements or misrepresentations that raise their "right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Indeed, the Plaintiffs' opposition brief points to no facts that support their claims for fraud. *See* Pl. Mem. Opp. Dismiss at 4-7. The Amended Complaint points vaguely to "oral representations which Defendant Delaire made to Plaintiff Schulman in 2002," to the effect that Madoff and BMIS were successful and reliable investors and CohMad had invested many millions of dollars of its own and its clients' money with positive results. Am. Compl. ¶ 16.

These are slim facts in view of Rule 9(b)'s requirements. Ultimately, however, the Amended Complaint is insufficient because it fails to "explain why the statements were fraudulent."

3

*Rombach*, 355 F.3d at 170. In particular, Plaintiffs fail to allege facts suggesting that Delaire had knowledge that his activities were in furtherance of a fraud. *See SEC v. Cohmad Securities*, No. 09 Civ. 5680 (LLS), 2010 WL 363844, at *2-3 (S.D.N.Y. Feb. 2, 2010) (holding that "one who conducts normal business activities while ignorant that those activities are furthering a fraud is not liable for securities fraud."). The Amended Complaint asserts that Delaire "knew" that CohMad was just an artifice of Madoff's Ponzi scheme. However, it alleges no facts that support such an allegation, nor anything that suggests that Delaire had any special knowledge that the Madoff Entities were anything but a legitimate investment enterprise.

In a typically conclusory allegation, the Amended Complaint asserts that "Delaire knew, or had substantial information available to him sufficient to cause him to suspect, that the Madoff Fund was a Ponzi scheme or at least that the published reports concerning clients accounts at BMIS, and statements of investor accounts . . . were unsubstantiated, not independently verified, and not full, complete and accurate." Am. Compl. ¶ 34. No facts are provided, however, that show with any particularity what information Delaire actually possessed. This Court has "routinely" rejected the argument that such irregularities in Madoff's investment business were red flags that should have put investment professionals on notice of the fraud. *See Saltz*, 2010 WL 5298225, at *5 ("An inference of scienter based on publicly available red flags is simply not as cogent and compelling as the opposing inference of nonfraudulent intent."); *Cohmad Securities*, 2010 WL 363844, at *4 (describing such an argument as "fraud by hindsight.").

This Court has recognized that the Madoff scheme went virtually undetected. *See Cohmad Securities*, 2010 WL 363844, at *2. As with other lawsuits involving CohMad representatives, the Amended Complaint here "supports the reasonable inference that Madoff fooled the defendant[] as he did individual investors, financial institutions, and regulators." *Cohmad Securities*, 2010 WL 363844, at *2. *See also Saltz*, 2010 WL 5298225, at *5-6 ("For twenty years, Madoff operated this fraud without being discovered and with only a handful of investors withdrawing their funds as a result of their suspicions.").

**B.  The complaint fails to specify fraudulent conduct**

A plaintiff pleading fraud based on deceptive conduct must specify one or more deceptive or manipulative acts performed, which defendants performed them, when the acts were performed, and the effect the scheme had on investors in the securities at issue. *In re Parmalat Sec. Litig.*, 383 F. Supp. 2d 616, 622 (S.D.N.Y.2006). Here, Plaintiffs allege that Delaire "was a key person

4

and principal operative of the fraudulent scheme with respect to Plaintiffs and an instrumental part of the fraud and artifice effected on the Plaintiffs in the September to December, 2008 period." Am. Compl. ¶¶ 46-47. This provides no specificity as to any deceptive or manipulative act, no connection between the Madoff Ponzi scheme and Delaire, and ultimately no knowledge that Delaire, by facilitating Plaintiffs' investments, knew he was furthering a fraud. *See Cohmad Securities*, 2010 WL 363844, at *2-3.

The Plaintiffs allege that CohMad's compensation arrangement with BMIS gives rise to an inference of fraudulent intent on the part of CohMad representatives who sought investors for BMIS. This very argument has been rejected by this Court. *See Cohmad Securities*, 2010 WL 363844, at *3.

## II.   The complaint fails to establish that Delaire owed a fiduciary duty to the Plaintiffs.

The claims for fraudulent omissions, negligence, gross negligence and breach of fiduciary duty must be dismissed because Delaire owed no duty to the Plaintiffs. The Amended Complaint cites as fraudulent omissions Delaire's alleged failure to disclose the nature of the relationship between CohMad and Madoff, his actual day-to-day responsibilities for CohMad, and the total compensation he received from CohMad and/or Madoff.  Am. Comp. ¶ 21.

 "A fiduciary obligation is not to be lightly implied." *United States v. Skelly*, 442 F.3d 94, 98 (2d Cir. 2006). Omissions are only actionable where there is a duty to disclose and the omitted facts are material. *SEC v. Dorozhko*, 574 F.3d 42, 50 (2d Cir. 2009). "[A] duty to disclose arises only when one party has information that the other [party] is entitled to know because of a fiduciary or other similar relation of trust and confidence between them." *U.S. v. Szur*, 289 F.3d 200, 211 (2d Cir. 2002) (internal citation omitted).

 Delaire shared no fiduciary relationship to the Plaintiffs because he was a mere middleman who Plaintiffs sought out for information and ultimately an introduction to Madoff. *See* Am. Compl. ¶14. According to Plaintiffs he received some form of compensation from Madoff or BMIS in the nature of a finder's fee or commission for introducing the transacting parties. *See id.* ¶ 71. Subsequent to Plaintiffs' investment with Madoff and BMIS, Delaire kept only irregular telephone contact with Plaintiff. Am. Compl. ¶ 19. Plaintiffs have not alleged that Delaire exercised any discretion with respect to Plaintiffs or their investments, nor that they shared any special relationship that would otherwise give rise to a fiduciary duty. *See Skelly*, 442 F.3d at 98 (addressing fiduciary duty of broker to purchaser). Although Plaintiffs turned to Delaire for

information and an introduction to Madoff, Am. Compl. ¶ 14, they have failed to show the kind of "reliance and de facto control and dominance, which are required to establish a fiduciary relationship." *Skelly*, 442 F.3d at 98 (citations omitted); *see also Ranco Mgmt. Corp. v. DG Inv. Bank Ltd.*, 17 F.3d 883, 888-89 (6th Cir. 1994) (holding that under New York law, a defendant "finder", retained to find a purchaser, owed no fiduciary duty to either the purchaser or the seller who ultimately consummate a transaction); *Ne. Gen. Corp. v. Wellington Advertising, Inc.*, 82 N.Y.2d 158, 160 (1993) (holding that unless an agreement establishes a relationship of trust, "one will not spring from a finder's contract in and of itself for without some agreed-to nexus, there is no relationship of trust and, thus, no duty of highest loyalty.").[1]

Because Plaintiffs have failed to show a fiduciary duty, the state law claims for negligence, gross negligence and breach of fiduciary duty must also be dismissed.[2]  Even were there a duty here, the claims would fail because Delaire's alleged failures to disclose were not the cause of Plaintiffs' injury. As the Amended Complaint acknowledges, Plaintiffs sought out Delaire as a means of introduction to the Madoff Entities' management.  *See* Am. Compl. ¶ 14. This supports no inference that the Defendant here is liable for the misconduct that caused the harm alleged.

### III.    The unjust enrichment claim fails

"In order to succeed on a claim for unjust enrichment under New York law, a plaintiff must prove that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Diesel Props S.r.l. v. Greystone Business Credit II LLC*, --- F.3d ---, ---, 2011 WL 37813, at *10 (2d Cir. Jan. 6, 2011).  The Plaintiffs allege upon information and belief that "Delaire realized salaries, bonuses, commissions, and other property and money from the operation of the Madoff

---

[1] In addition to their failure to show a fiduciary duty, Plaintiffs acknowledge that there was at least some disclosure here. Delaire told Schulman in 2002 that he was a securities broker with CohMad, and that CohMad was an independent company that, while associated with Madoff, had made an independent decision to invest with Madoff and BMIS. Am. Compl. ¶ 16(b).  Plaintiffs' innuendo about the "close" personal relationship between Delaire and Madoff is completely unsupported by facts.

[2] "An action for negligence, in New York, requires a plaintiff to prove [amongst other elements,] the existence of a duty on defendant's part as to plaintiff . . . ."  *Muller-Paisner v. TIAA*, 289 F. App'x 461, 465, 2008 WL 3842899, at *3 (2d Cir. 2008). Gross negligence represents "an extreme departure" from the standards of ordinary care. *AMW Materials Testing, Inc. v. Town of Babylon,* 584 F.3d 436, 454 (2d Cir. 2009). To state a claim for breach of fiduciary duty in New York, a plaintiff need only allege that the duty existed and that it was breached. *Appleton Acquisition, LLC v. Nat'l Hous. P'ship,* 10 N.Y.3d 250, 258 (2008).

Fund . . . and from the solicitation and inducing of the Plaintiffs . . . ." Am. Compl. ¶ 71. They assert that "Delaire should be required to disgorge the funds he may have inequitable received from the Madoff Fund." *Id.* at ¶ 72. These conclusory allegations will not do. As noted above, it was Plaintiffs, and not Delaire, who pursued the relationship as a means to ultimately invest with Madoff and BMIS. Plaintiffs have offered nothing but speculation in support of their theory that Delaire in fact received compensation as a result of their investment with BMIS. Even if he had, that does not, without more, suggest that equity demands disgorgement. Plaintiffs allege nothing that suggests that any compensation received by Delaire was improper in its own right or infected by the improprieties plaguing the Madoff Ponzi scheme. *See Diesel Props*, 2011 WL 37813, at *10 (rejecting unjust enrichment claim where the plaintiff failed to show that defendant's receipt of certain valuable rights was improper under the parties' agreement).

## CONCLUSION

For the foregoing reasons, the motion to dismiss is GRANTED in its entirety. The Clerk of the Court is directed to close the matter and remove it from my docket.

SO ORDERED
February 22, 2011
New York, New York

_____
Hon. Harold Baer, Jr.
U.S.D.J.

7